E-FILED on   4/21/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DALE BUXTON,<br><br>       Plaintiff,<br><br>    v.<br><br>EAGLE TEST SYSTEMS, INC.,<br><br>       Defendant. | No. CV 08-04404 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 84]** |

     Defendant Eagle Test Systems, Inc. ("Eagle Test") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on plaintiff Dale Buxton's claims for breach of contract, fraud and misrepresentation, unlawful inducement to move, wrongful termination, intentional interference with prospective economic relations, intentional infliction of emotional distress and punitive damages.  For the reasons stated below, the motion is granted with respect to plaintiff's claim for breach of the March 14, 2008 employment agreement, wrongful termination, intentional interference with prospective economic advantage and intentional infliction of emotional distress claims and denied as to his other claims.

# I. BACKGROUND

In August 2002, Eagle Test's President and CEO, Leonard Foxman, offered plaintiff Dale Buxton the position of Eagle Test's Vice President of Asia Operations. Buxton accepted the position and began working for Eagle Test in Singapore in September 2002. In January 2005, following the partial acquisition of Eagle Test by a private equity firm, Buxton received a raise and a new employment agreement. The 2005 Employment Agreement ("2005 Agreement") detailed the terms of Buxton's employment, including duties, salary, and benefits, and provided that if Eagle Test terminated him without cause, or if he quit for good reason, he was entitled to a severance package worth fifty percent of his base salary for two years following the date of termination and continuation of his group health plan benefits. Good reason for Buxton terminating his employment included: (1) a substantial adverse change in the nature or scope of Buxton's responsibilities, authorities, powers, functions, or duties; (2) a reduction in Buxton's base salary; or (3) the relocation of the offices at which Buxton was employed (in Singapore) to a location more than seventy-five miles away.

In 2006, Eagle Test became a publicly-traded corporation, and Foxman created a new executive position, Vice President of Worldwide Sales and Marketing. Buxton was considered a candidate for the new position, but around October 2007, Foxman decided that Dan Faia, Eagle Test's VP of North American Sales, would be promoted to the new executive position. Buxton was expected to report directly to Faia.

Immediately after Buxton learned that he would not be promoted and that Faia would become the VP of Worldwide Sales and Marketing, and seeking to prevent a disgruntled Buxton from leaving the company and joining a competitor, Eagle Test and Foxman offered Buxton a new position—Vice President of Fabless/Subcontractors—to be based out of Santa Clara, California. On October 12, 2007, Foxman provided Buxton with a PowerPoint presentation discussing Eagle Test's expectations for a "Fabless/Subcon Business Unit," which included projected compensation and organizational growth. On October 17, 2007, Foxman sent Buxton an email with the heading "DALE-PLEASE UNDERSTAND THAT THE FABLESS SUBCON LEADERSHIP POSITION IS AN OFFER NOT A REQUIREMENT." Foxman explained in the email that a transfer to California

was an offer, not a requirement, and that Buxton could choose to remain in his position in Singapore.  At some point, Foxman communicated that Eagle Test would be restructuring its Asia operations, and that if Buxton remained in Singapore, it would be in some reduced capacity.  Buxton questioned whether he really had a choice as to accepting the position in California.  He accepted it on November 11, 2007.

On March 17, 2008, Buxton signed a revised employment agreement ("2008 Agreement"). The 2008 agreement provided that Buxton's employment was at-will and that Eagle Test could terminate Buxton or change the conditions of his employment at any time.  The 2008 Agreement further stated that it superseded any previous discussions or written representations and could be altered only by a written document signed by Eagle Test's President and Buxton, as well as that "employment is contingent upon the execution of the Company's agreements." Ex. 16.

Buxton moved to California in April 2008.  Buxton was asked to perform tasks that he considered beneath his professional stature, and Faia demanded detailed planning information from Buxton before he would allow Buxton to call on customers.  On May 16, 2008, Eagle Test's VP of Human Resources, Marge Rodino, sent Buxton letter explaining, "Your refusal to call on Eagle Test customers makes it impossible for you to perform a critical part of your job duties.  We consider your refusal to perform your job to be a resignation of your employment with Eagle Test." Ex. 20.

Buxton had been listed as a resident director of Eagle Test in Singapore and other Asian countries.  While he was listed as a resident director of Eagle Test, even after his termination, he could not register as a resident director of any other company.  In September 2008, Buxton was detained by customs officials in Singapore and threatened with fine and imprisonment for entering the county without a work visa even though he was listed as an Eagle Test employee.

## II. ANALYSIS

### A. First Claim for Relief: Breach of Contract

Plaintiff's first claim for relief is for breach of contract. Plaintiff claims that Eagle Test breached the 2005 Employment Agreement by failing to pay him the severance package called for in that Agreement "[i]n 2008 when [he] was transferred to California and told to sign a new

agreement." Opp. at 3:1-5. Plaintiff also claims that the 2005 Agreement was breached on May 16, 2008 when Buxton's employment was terminated, either because the 2008 Agreement incorporated the terms of the 2005 Agreement or because the 2008 Agreement was void because it was not timely accepted or was fraudulently induced.

First, there is no evidence that Eagle Test's 2008 employment offer expired prior to delivery of Buxton's acceptance to Eagle Test. Buxton has accused Eagle Test of deliberately altering the produced version of the 2008 Agreement in order to mask the date that it was received from Buxton. There is no evidence that Buxton failed to timely accept the 2008 Agreement or acted as if he had not accepted the Agreement. The parties' conduct itself establishes the parties considered the Agreement as having been made.

Second, if Buxton cannot establish that the 2008 Agreement is void as having been fraudulently induced, he cannot recover under the 2005 Agreement. The 2008 Agreement explicitly provides that it constitutes a total integration of the parties' negotiated terms and that neither party relied on any oral or written representations not contained in the 2008 Agreement. The 2008 agreement, therefore, constitutes a novation: "the substitute of a new obligation for an existing one." *Wells Fargo Bank v. Bank of America*, 32 Cal. App. 4th 424, 431 (1995) (quoting Cal. Civ. Code § 1530). A novation extinguishes the prior agreement. *See Beckwith v. Sheldon*, 165 Cal. 319, 323 (1913).

Buxton's contends that the 2008 Agreement incorporates the 2005 Agreement by use of the language "my employment is contingent upon the execution of the company's agreements." Opp. at 6:23. That language cannot refer to the 2005 Agreement given the tense of the language and the superseding sections of the 2008 Agreement.

The 2008 Agreement replaced and nullified the 2005 Agreement, and its terms are absolutely clear: Buxton's employment was at-will. The 2008 Agreement, if not induced by fraud, was the operative agreement between the parties and not breached. The question of whether it was induced by fraud is discussed below.

**B. Second Claim for Relief: Fraud and Misrepresentation**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC                                                              4

The essence of plaintiff's fraud claim is that Eagle Test through Foxman made a fraudulent promise to plaintiff of a new job in California. "The disputed issue here is whether Defendant made a false promise of a new job in California to plaintiff." Opp. at 16:6-7.

> Promissory fraud is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 973-74 (1997) (internal quotations and citations omitted); *see* Cal. Civ. Code §§ 1572(4) and 1710(4). "All of these elements must be present if actionable fraud is to be found; one element absent is fatal to recovery." *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988). "Actual fraud is always a question of fact." Cal. Civ. Code § 1574). The question here, therefore, is whether plaintiff has pointed to facts in the record that support each of the elements of a fraud claim. *See* Fed. R. Civ. P. 56(c)(1)(A).

There is no dispute that defendant promised plaintiff a new position in California as Vice President of Fabless/Subcontractors. Plaintiff has also offered credible evidence that he relied on the existence of that position when he agreed to take it and move to California. If the job did not exist as promised, there is no question but that plaintiff suffered resulting damage. However, defendant has offered persuasive evidence that job was available as represented and that plaintiff's employment was terminated because plaintiff refused to perform the duties of his new job. Thus, the critical questions are whether plaintiff has pointed to evidence in the record from which it can reasonably be inferred that the position as Vice President of Fabless/Subcontractors did not exist as represented, that Foxman knew at the time he made his representations concerning the job that they were false and that plaintiff justifiably relied on the representations.

Plaintiff is precluded from relying on oral representations that contradict the at-will provision of the 2008 Agreement. In *Slivinsky v. Watkins-Johnson Co.*, the California Court of Appeal held that a former employee's fraud claim failed because she could not have justifiably relied on the employer's oral assurances of continued employment where the parties' integrated employment

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC                                      5

agreement provided that employment was terminable at will, with or without cause. 221 Cal. App. 3d 799, 806-07 (1990). Here, the parties' 2008 Agreement expressly stated:

> By accepting this offer, you agree and acknowledge that you have not and are not relying on any oral or written statements, promises, or representations made by any employee, agent, or representative of the Company that are not expressly set forth in this letter or its addendum/addenda.

Hersher Decl. ¶ 19, Ex. 16. Thus, plaintiff cannot rely on alleged representations of continued employment or that he was still covered by the 2005 Agreement.

Plaintiff, however, does contend that the offer made to him in a letter from the HR Manager of Eagle Test dated March 16, 2008 of the position of the Vice-President of Fabless/Subcontractors (2008 Agreement) contained representations which were false. Specifically, he claims that the job did not actually exist, that Foxman knew that the job did not exist and that the promise of the job was made with no intent to make it available.

Plaintiff relies on inferences drawn from the evidence to raise a question of fact as to the falsity of the representation that the Vice-President of Fabless/Subcontractors position had been created for him and to show that the representation was made with the required scienter. Plaintiff testified that when he came to California he was not provided an office, not given a budget, provided only minimal support, was not allowed to hire support personnel, and was not permitted to travel. Bohn Decl. ¶ 1, Ex. 26 (Buxton Depo.) at 600:2-24, 603:20-606:21 and 607:16-608:6 ("Buxton Depo. at _____"). His employment was terminated within three weeks of his arrival in California (Ex. 20) on the false premise that he refused to call on customers (Buxton Depo. at 687:19-688:3, 693:20-694:2 and 696:17-701:11) and that Eagle Test did not hire anyone for the position after he was terminated. Bohn Decl. ¶ 2, Ex. 27 (Foxman Depo.) at 234:21-235:5 ("Foxman Depo. at _____"). Plaintiff further supports his claim by offering facts from which he contends a jury could infer that Foxman was motivated to eliminate Eagle Test's financial obligations to plaintiff. Foxman could not accomplish this by just terminating plaintiff's employment. Immediate termination would have triggered the obligation to pay severance and could have resulted in employment of plaintiff by a competitor located in Asia, a circumstance defendant wanted to avoid. Therefore, Foxman was motivated to devise a scheme by which Eagle Test could avoid the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC         6

1 severance obligation in the 2005 Agreement and make any potential jump by plaintiff to a
2 competitor more difficult.  Plaintiff points to the fact that under the 2005 Agreement he was entitled
3 to a considerable severance package while under the 2008 Agreement there is no severance
4 obligation.  Plaintiff also cites Foxman's testimony that suggests Foxman believed that plaintiff
5 made too much money (Foxman Depo. at 103:13-104:23, 106:20-107:3, *see also* Buxton Depo. at
6 495:13-496:23, 498:22-499:2, 69:4-570:9) and feared that plaintiff might jump to a competitor in
7 Singapore (Foxman Depo. at 114:4-115:12).  Based on these facts, among others, plaintiff argues
8 that it is reasonable to infer that the 2008 Agreement's at-will provision and the transfer of plaintiff
9 to California were means by which Eagle Test could terminate plaintiff's employment without
10 incurring financial obligations and minimize plaintiff's ability to go to work for a competitor in Asia.

11       Defendant correctly argues that nonperformance of a promise alone does not prove that a
12 representation was false when made.  *See Church of Merciful Saviour v. Volunteers of America, Inc.*,
13 184 Cal.App.2d 851, 859-60 (1960) (proof of non-performance at most warrants an inference of an
14 intention not to perform at time the representation was made).  Here, however, plaintiff has not just
15 offered defendant's non-performance of its promise.  In light of the circumstances surrounding the
16 offer of the 2008 Agreement, the concerns Eagle Test had at the time, and the facts as testified to by
17 plaintiff, a triable issue of fact exists with respect to plaintiff's claim that defendant offered to create
18 the position of  Vice-President of Fabless/Subcontractors for plaintiff in California with no intent to
19 perform that promise.

20       **C.  Third Claim: Unlawful Inducement to Move**

21       Plaintiff asserts that defendant violated California Labor Code § 970 by persuading him to
22 accept the offer to be the  Vice-President of Fabless/Subcontractors for defendant in California.  The
23 elements of unlawful inducement under California Labor Code § 970, which prohibits employers
24 from inducing employees to change their residence to, from, or within California by making
25 knowingly false representations regarding the conditions of employment, are closely connected to
26 the elements of a fraud claim.  *See Estes v. Allied Signal, Inc.*, 1998 U.S. Dist. LEXIS 18206 (N.D.
27 Cal. 1998) (section 970 requires same elements as fraud, including scienter).  Since plaintiff has
28 raised triable issues of fact with respect to his fraud claim, he has also raised a question of fact as to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC       7

whether defendant violated section 970 by inducing plaintiff to accept the purported position of Vice President of Fabless/Subcontractors in California.

### D. Fourth Claim: Wrongful Termination

Plaintiff's fourth claim seeks relief on the theory that plaintiff was terminated from his employment in violation of the public policy set forth in California Labor Code § 970. Defendant submits that plaintiff's fourth claim for relief duplicates plaintiff's third claim for relief and, therefore, should be dismissed. Defendant's position has merit. *See Shoemaker v. Myers*, 52 Cal.3d 1, 24 (1990).

### E. Fifth Claim: Intentional Interference With Prospective Economic Relations

Plaintiff's opposition withdraws his claim for intentional interference with prospective economic relations and concedes that summary judgment should be granted with respect to that claim.

### F. Sixth Claim: Intentional Infliction of Emotional Distress

Plaintiff's sixth claim for relief alleges that defendant intentionally inflicted severe emotional distress on him in various ways. He claims that defendant inflicted emotional distress by: (1) inducing him "to move with his family from Singapore to California for the purpose of luring him to an at-will employment state in order to terminate him and avoid paying the agreed severance package" and by misrepresenting what the new job would be (Third Amended Complaint at 11:21-24); (2) changing "the delivery of all of Plaintiff's personal property and documents (which were supposed to be delivered to Plaintiff in California) to corporate headquarters in Chicago" and denying him access to his own personal property and documents and by opening the packed boxes and removing some of plaintiff's personal papers (Third Amended Complaint at 11:24-12:3); (3) "changing the nature and terms of Plaintiff's new position, significantly reducing the scope of Plaintiff's management responsibilities and reducing Plaintiff's prospective income in terms Defendant knew plaintiff could not meet and would not accept" (Third Amended Complaint at 12:4-8); and (4) "from approximately April 20 to May 16, 2008 . . . harass[ing], humiliat[ing] and insult[ing] Plaintiff in an attempt to provoke Plaintiff." (Third Amended Complaint at 8-10.)

1    A claim for intentional infliction of emotional distress requires that an employer's actions be
2 "so extreme and outrageous as to go beyond all possible bounds of decency, to be regarded as
3 atrocious, and utterly intolerable in a civilized community." *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d
4 493, 499 (1970). The conduct alleged in categories (1) and (3) adds nothing to plaintiff's case
5 because it is previously asserted in his fraud and unlawful inducement to move claims and, if
6 successful on those claims, plaintiff will be able to recover for his emotional distress.[1] However,
7 absent a showing of fraud or some other outrageous conduct, employment decisions, even if
8 unreasonable or unfair, generally do not constitute outrageous conduct giving rise to a claim for
9 intentional infliction of emotional distress.

10    Plaintiff has failed to cite facts that support a claim that the conduct described in category (2)
11 was done intentionally to harass, humiliate or insult plaintiff or "was beyond the bounds of human
12 decency" or "utterly intolerable in a civilized society." *See Alcorn*, 2 Cal. 3d at 499. The conduct
13 described in category (4) is either described in the other categories or plaintiff has failed to cite to
14 the evidence that reflects those allegations.

15    For the above reasons, summary judgment on plaintiff's intentional infliction of emotional
16 distress claim is granted.

17    **G. Punitive Damages**
18    Since plaintiff's fraud claim survives, the claim for punitive damages remains.

20                                **III. CONCLUSION**
21    For the foregoing reasons, Eagle Test's motion for summary judgment is granted and denied
22 as follows:
23    1. Granted as to breach of the 2008 Agreement;

---

[1] It is curious, however, that in the Second and Third Counts plaintiff alleges that defendant knowingly misrepresented plaintiff's new job to induce him to move to California and convert his status to that of an at-will employee while the conduct alleged in category (3) of his Sixth Count is that *after* he moved his family to California defendant *began* changing the nature and terms of plaintiff's new position. In other words, in his Sixth Count, plaintiff implies that defendant's representations were not false when made.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC                                              9

2. Denied as to breach of the 2005 Agreement (but only if the 2008 Agreement is proven to be void);

3. Denied as to Claim 2 (Fraud);

4. Denied as to Claim 3 (Unlawful Inducement to Move);

5. Granted as to Claim 4 (Wrongful Termination)

6. Granted as to Claim 5 (Interference with Economic Relations);

7. Granted as to Claim 6 (Intentional Infliction of Emotional Distress); and

8. Denied as to Claim for Punitive Damages.

DATED:     4/21/2011

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. CV 08-04404 RMW
MEC                                                                 10